UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

ALL SEASONS JOY, LLC,

     Debtor.

_____/

Case No.: 26-12879-EPK
Chapter 11

## DEBTOR'S SUBCHAPTER V PLAN OF REORGANIZATION

---

*/s/ Frank M. Wolff,*
Frank M. Wolff, Esq.
Florida Bar No. 319521
Nardella & Nardella, PLLC
135 W. Central Blvd., Suite 300
Orlando, FL 32801
Phone: (407) 966-2680
Facsimile: (407) 966-2681

*COUNSEL FOR THE DEBTOR*

Dated: May 22, 2026

All Seasons Joy, LLC ("Debtor"), by and through its undersigned counsel, hereby proposes the following Plan of Reorganization ("Plan") pursuant to 11 U.S.C. §§ 1190–1195 and Subchapter V of Chapter 11 of the Bankruptcy Code.

### ARTICLE I — DEFINITIONS AND CONSTRUCTION

**1.1** Definitions. Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Bankruptcy Code, 11 U.S.C. §§ 101 et seq.

(a) "Administrative Claim" means any cost or expense of administration of this case allowed under 11 U.S.C. § 503(b) and entitled to priority under 11 U.S.C. § 507(a)(2).

(b) "Allowed Claim" means a claim or any portion thereof that has been allowed by a Final Order or proof of claim that has not been objected to within the applicable time period.

(c) "Balloon Payment" means the lump-sum payment of all remaining principal and accrued interest due on the 37th month following the Effective Date.

(d) "Confirmation Date" means the date on which the Court enters an order confirming this Plan.

(e) "Daniels Judgment" means the final judgment entered on May 14, 2024, in the matter styled Frank Daniels v. All Seasons Joy, LLC et al., Case No. 2018-CA-008258, Circuit Court of the 15th Judicial Circuit, Palm Beach County, Florida, in the principal amount of $3,006,576.10, as affirmed on appeal on October 23, 2025.

(f) "Debtor" means All Seasons Joy, LLC, an entity organized under the laws of the State of Florida, with its principal place of business at 1441 W. 30th Street, Riviera Beach, Florida 33404.

(g) "Effective Date" means the first day of the first full calendar month that is at least fourteen (14) days after the Confirmation Date.

(h) "Plan Payment" means the monthly payment due to Class 2 as calculated under Article IV of this Plan.

(i) "Properties" means the five residential rental properties owned by the Debtor, more particularly described in Article III hereof.

(j) "Subchapter V Trustee" means Linda Marie Leali, P.A., the Subchapter V Trustee appointed in this case.

(k) "Third-Party Contributions" means voluntary monetary contributions from Hill Top Missionary Baptist Church, its members, affiliates, or other third parties committed to funding the Plan.

(l) "Till Rate" means the interest rate determined by the Court pursuant to Till v. SCS Credit Corp., 541 U.S. 465 (2004), consisting of the national prime rate plus a risk adjustment as the Court deems appropriate.

**1.2** Construction. Unless the context otherwise requires, any reference to an existing document or exhibit means that document as it may have been amended, modified, or supplemented. The words "herein," "hereof," and "hereunder" refer to this Plan.

## ARTICLE II — CLASSIFICATION OF CLAIMS AND INTERESTS

**2.1**     Unclassified Claims. In accordance with 11 U.S.C. § 1123(a)(1), the following claims are not classified:

(a) Administrative Claims under 11 U.S.C. § 507(a)(2).

(b) Subchapter V Trustee Fees and Expenses under 11 U.S.C. § 1183.

(c) United States Trustee Quarterly Fees under 28 U.S.C. § 1930.

**2.2**     Classified Claims and Interests.

(a) Class 1 — Priority Tax Claims. Claims entitled to priority under 11 U.S.C. § 507(a)(8), including the claims of the Palm Beach County Tax Collector for ad valorem real property taxes.

(b) Class 2 — Secured Claim of Frank Daniels. The allowed secured claim of Frank Daniels arising from the Daniels Judgment, secured by a judgment lien on the Properties, in an amount equal to the value of the Debtor's interest in the Properties as determined by the Court under 11 U.S.C. § 506(a).

(c) Class 3 — General Unsecured Claims. All allowed unsecured claims, including any deficiency claim of Frank Daniels resulting from the bifurcation of the Daniels Judgment under 11 U.S.C. § 506(a), and the claim of Tucker Law, if any.

(d) Class 4 — Equity Interests. The membership interest in All Seasons Joy, LLC held by Hughetta Davis.

### ARTICLE III — DESCRIPTION OF THE DEBTOR'S PROPERTIES

The Debtor owns five residential rental properties located in Riviera Beach, Palm Beach County, Florida, which constitute the Debtor's principal assets:

| Property Address | Parcel ID | Appraised Value (02/17/2026) |
|---|---|---|
| 1472 W. 34th Street (3-unit) | 56-43-42-29-03-007-0320 | $465,000 |
| 1350 W. 29th Street | 56-43-42-29-03-017-0370 | $310,000 |
| 340 W. 19th Street | 56-43-42-28-25-011-0210 | $350,000 |
| 1306 W. 23rd Street | 56-43-42-29-13-017-0370 | $310,000 |
| 1424 W. 34th Street | 56-43-42-29-03-007-0430 | $280,000 |
| **Total** | | **$1,715,000** |

### ARTICLE IV — TREATMENT OF CLAIMS AND INTERESTS

**4.1**     Unclassified Claims — Administrative Claims and Trustee Fees.

(a) All allowed Administrative Claims shall be paid in full in cash on the Effective Date or as otherwise agreed between the Debtor and the holder of such claim, or as ordered by the Court.

(b) United States Trustee quarterly fees shall be paid as they become due until the case is closed, converted, or dismissed.

(c) Fees and expenses of the Subchapter V Trustee shall be paid in accordance with the Court's orders.

**4.2**     Class 1 — Priority Tax Claims. [IMPAIRED — Entitled to Vote]

All allowed Class 1 priority tax claims of the Palm Beach County Tax Collector, currently estimated at approximately $15,211.63 in the aggregate, shall be paid in full in cash on the Effective Date or in equal monthly installments over a period not to exceed sixty (60) months from the Petition Date, with interest at the statutory rate, pursuant to 11 U.S.C. § 1129(a)(9)(C).

**4.3**     Class 2 — Secured Claim of Frank Daniels. [IMPAIRED — Entitled to Vote]

(a) Determination of Secured Claim Amount. Pursuant to 11 U.S.C. § 506(a), the allowed secured claim of Frank Daniels shall be fixed in the amount equal to the value of the Debtor's interest in the Properties as determined by the Court at or prior to confirmation. Based on the Debtor's appraisals, the Debtor asserts that the value of the Properties is $1,715,000. Subject to the Court's final determination and after payment or reservation for priority tax liens, the Debtor estimates the Class 2 Allowed Secured Claim to be approximately $1,699,788.37 (i.e., $1,715,000 less approximately $15,211.63 in priority tax claims).

(b) Payment Terms — 30-Year Amortization with Balloon at Month 60. Commencing on the Effective Date, the Debtor shall pay the Class 2 Allowed Secured Claim in equal monthly installments calculated on a thirty (30) year amortization schedule at the Till Rate as determined by the Court. On the 37th month following the Effective Date, the entire remaining unpaid principal balance together with all accrued and unpaid interest shall become immediately due and payable as a Balloon Payment.

(c) Till Rate. Interest on the Class 2 Allowed Secured Claim shall accrue at the Till Rate, which shall be the national prime rate in effect as of the Confirmation Date plus a risk adjustment as determined by the Court. See Till v. SCS Credit Corp., 541 U.S. 465

6

(2004). The Debtor requests that the Court set the appropriate risk adjustment at confirmation.

(d) Illustrative Payment Calculation. By way of illustration only (subject to the Court's determination of the Allowed Secured Claim amount and Till Rate):

- Assumed Secured Claim: $1,699,788.37

- Assumed Till Rate: [____]% (to be determined by the Court)

- Monthly Payment (30-year amortization): $[____]

- Balloon Payment due Month 60: $[____]

(e) Source of Plan Payments. The monthly Plan Payments to Class 2 shall be funded from the following sources:

**(i) Rental Income from the Properties.** The Debtor currently receives gross monthly rental income of approximately $5,550.00 from its five rental properties, as set forth in the Monthly Operating Report. The Debtor's current lease structure is as follows:

- 340 W. 19th Street — Tenant: Akira West; Lease expires December 31, 2026; Monthly rent: $1,750.00

- 1472 W. 34th Street — Tenant: Geraldine Blount; Month-to-month lease; Monthly rent: $800.00

- 1350 W. 29th Street — Tenant: Jean Ferdinand; One-year lease; Monthly rent: $1,000.00

- 1306 W. 23rd Street — Tenant: Mary Hightower; One-year lease expires October 31, 2026; Monthly rent: $2,000.00

• 1424 W. 34th Street — Tenant: Lucinda Warren; Monthly rent: $[___]

**(ii) Third-Party Contributions.** The Debtor shall supplement rental income with voluntary contributions from Divine Partners LLC.   ("Divine").  Divine owns the properties listed below (the "Divine Properties") and have rental income as listed.

311 West 25th Street, Riviera Beach, FL  rent  $2,100.00
681 West 35th Street Riviera Beach, FL  rent  $2,200.00
1821 Avenue H East Riviera Beach, FL  rent   $2,300.00

The total rentals will be $6,600, and shall be sufficient, with the income from the Debtor's Properties to fund the Plan

**(iii) Balloon Payment Funding.** The Balloon Payment due on the 37th month shall be funded through one or more of the following: (A) refinancing of some or all of the Properties; (B) sale of one or more Properties; (C) lump-sum Third-Party Contributions; or (D) any combination thereof. The Debtor shall use commercially reasonable efforts to secure refinancing or complete a sale sufficient to satisfy the Balloon Payment prior to its due date.

(f) Lien Retention. Pursuant to 11 U.S.C. § 1129(b)(2)(A)(i)(I), Frank Daniels shall retain his judicial lien on the Properties to the extent of his Allowed Secured Claim until the earlier of (i) payment in full of the Allowed Secured Claim with interest at the Till Rate, or (ii) discharge under 11 U.S.C. § 1192.

(g) Default Provisions. If the Debtor fails to make any Plan Payment within fifteen (15) days of the date such payment is due, the holder of the Class 2 claim shall provide written notice of default to the Debtor and Debtor's counsel. The Debtor shall have thirty (30) days from receipt of such notice to cure the default. If the Debtor fails to cure within

8

the cure period, the holder of the Class 2 claim may seek appropriate relief from this Court, including but not limited to modification of the automatic stay, conversion of the case, or any other remedy available at law or in equity.

**4.4**     Class 3 — General Unsecured Claims. [IMPAIRED — Entitled to Vote]

All allowed Class 3 general unsecured claims, including the unsecured deficiency claim of Frank Daniels (estimated at approximately $1,306,787.73, i.e., $3,006,576.10 less the Allowed Secured Claim) and the claim of Tucker Law (if any and if allowed), shall be paid pro rata from the Debtor's projected disposable income over the applicable commitment period of three (3) to five (5) years, as required by 11 U.S.C. § 1191(c)(2).

The Debtor proposes to pay all projected disposable income remaining after payment of Administrative Claims, Class 1, and Class 2 obligations to holders of allowed Class 3 claims during the commitment period. The Debtor acknowledges that under 11 U.S.C. § 1191(c)(2), the Plan must provide that all of the projected disposable income of the Debtor received during the three-year period (or such longer period not to exceed five years as the Court may fix) beginning on the date that the first payment is due under the Plan will be applied to make payments under the Plan.

**4.5**     Class 4 — Equity Interests. [UNIMPAIRED — Not Entitled to Vote]

Hughetta Davis shall retain her membership interest in All Seasons Joy, LLC. Pursuant to 11 U.S.C. § 1191(b), the absolute priority rule does not apply in a case confirmed under Subchapter V without the consent of all impaired classes, provided the plan does not discriminate unfairly and is fair and equitable.

## ARTICLE V — MEANS FOR IMPLEMENTATION OF THE PLAN

**5.1**      Continued Operations. Following confirmation, the Debtor shall continue to operate its residential rental business and manage the Properties in the ordinary course. The Debtor shall continue to collect rents, maintain the Properties, pay taxes and insurance, and otherwise operate as a going concern.

**5.2**      Sources of Funding. The Plan shall be funded from:

(a) Rental Income. Monthly rental income from the Properties, currently approximately $5,550.00 per month, with the Debtor committing to use commercially reasonable efforts to increase rental income, including by bringing rents to market rates upon lease renewal. The Debtor's appraiser estimated market rents for the 3-unit property at 1472 W. 34th Street at approximately $1,250 per unit ($3,750 total for that property alone).

(b) Third-Party Contributions. Regular contributions from Divine Properties LLC in the amount of $6600 per month

(c) Refinancing or Sale. On or before the 60th month, the Debtor shall refinance or sell one or more Properties in an amount sufficient to pay the Balloon Payment. The Debtor's Properties have a combined appraised value of $1,715,000.

**5.3**      Disbursing Agent. All Plan Payments shall be made by the Debtor directly to the holders of Allowed Claims or as otherwise directed by the Court. The Subchapter V Trustee shall oversee and monitor Plan Payments in accordance with 11 U.S.C. § 1194.

**5.4**      Property Maintenance and Insurance. The Debtor shall maintain adequate insurance on all Properties throughout the term of the Plan and shall keep all real property taxes current.

Proof of insurance and tax payments shall be provided to the holder of the Class 2 claim and the Subchapter V Trustee upon reasonable request.

**5.5**    Post-Confirmation Management. The Debtor shall continue to be managed by Hughetta Davis as its sole member and manager.

## ARTICLE VI — FEASIBILITY

**6.1**    The Plan is Feasible. The Debtor submits that the Plan satisfies the feasibility requirement of 11 U.S.C. § 1129(a)(11) (as incorporated by § 1191) for the following reasons:

(a) The Debtor owns five income-producing rental properties with a combined appraised value of $1,715,000.

(b) The Properties generate current gross monthly rental income of $5,550.00.

(c) The Debtor has minimal operating expenses (no employees, minimal maintenance costs).

(d) Third-Party Contributions from The Divine Properties generate gross monthly rentals of $6,600 per month.

(e) The Balloon Payment on the 60 th month can be satisfied through refinancing or sale of one or more Properties. The combined property value of $1,715,000 provides adequate equity to support refinancing or generate sale proceeds sufficient to retire the Allowed Secured Claim.

(f) The Debtor's gross revenue from operations was $31,800 in 2025 and $31,806 in 2024.

## ARTICLE VII — LIQUIDATION ANALYSIS (BEST INTERESTS TEST)

**7.1**     Best Interests of Creditors. Pursuant to 11 U.S.C. § 1129(a)(7) (as applicable), each holder of an impaired claim that has not accepted the Plan will receive under the Plan at least as much as it would receive in a Chapter 7 liquidation.

In a hypothetical Chapter 7 liquidation:

(a) The Properties would be sold, likely at distressed or forced-sale prices significantly below appraised values.

(b) A Chapter 7 trustee's fees and expenses, auctioneer costs, transfer taxes, and administrative claims would substantially reduce distributable proceeds.

(c) Priority tax claims would be paid ahead of the Daniels secured claim.

(d) Given the forced-sale discounts (estimated at 25–40% below appraised values), administrative costs, and priority claims, the net recovery to Frank Daniels on his secured claim would likely be materially less than the full Allowed Secured Claim amount paid under this Plan (with interest at the Till Rate).

(e) General unsecured creditors would receive little to no distribution in a Chapter 7 liquidation.

The Plan therefore satisfies the best interests of creditors test.

## ARTICLE VIII — CONFIRMATION STANDARDS

**8.1**     Cramdown Under 11 U.S.C. § 1191(b). To the extent that all impaired classes do not accept the Plan, the Debtor requests confirmation pursuant to 11 U.S.C. § 1191(b) (the "cramdown" provision applicable to Subchapter V cases). The Plan does not discriminate unfairly,

and is fair and equitable with respect to each class of claims that is impaired under, and has not accepted, the Plan:

(a) As to Class 2 (Secured Claim): The Plan provides for retention of the lien securing the claim and payment of the Allowed Secured Claim with interest at the Till Rate, satisfying the requirements of 11 U.S.C. § 1129(b)(2)(A)(i).

(b) As to Class 3 (Unsecured Claims): The Plan provides that all projected disposable income of the Debtor for a period of three (3) to five (5) years will be applied to Plan payments, satisfying 11 U.S.C. § 1191(c)(2).

(c) As to Class 4 (Equity Interests): Pursuant to 11 U.S.C. § 1191(b), the absolute priority rule of § 1129(b)(2)(B)(ii) does not apply in Subchapter V cramdown cases. The Debtor's equity holder may retain her interest.

## ARTICLE IX — DISCHARGE

**9.1**    Upon completion of all Plan Payments, including the Balloon Payment, the Debtor shall be entitled to a discharge under 11 U.S.C. § 1192, as applicable.

## ARTICLE X — RETENTION OF JURISDICTION

**10.1**    The Court shall retain jurisdiction after confirmation for all purposes permitted under the Bankruptcy Code, including but not limited to:

(a) Hearing and determining any objections to claims;

(b) Hearing and determining any motions for relief from the automatic stay;

(c) Resolving any disputes arising under or related to the Plan;

13

(d) Modifying the Plan after confirmation pursuant to 11 U.S.C. § 1193;

(e) Entering a final decree closing the case;

(f) Enforcing the terms of the Plan and the Confirmation Order; and

(g) Any other matters related to the case or the Plan.

## ARTICLE XI — MISCELLANEOUS PROVISIONS

**11.1**    Binding Effect. The Plan shall be binding upon the Debtor, all creditors, equity interest holders, and all other parties in interest upon the entry of the Confirmation Order.

**11.2**    Governing Law. Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, obligations, and duties arising under this Plan shall be governed by the laws of the State of Florida.

**11.3**    Severability. If any provision of this Plan is determined to be invalid or unenforceable, such determination shall not limit or affect the enforceability of any other provision of this Plan.

**11.4**    Plan Modification. The Debtor reserves the right to modify this Plan at any time before confirmation in accordance with 11 U.S.C. § 1193 and after confirmation to the extent permitted by law.

**11.5**    Notices. All notices required under this Plan shall be sent to:

**Debtor:**
All Seasons Joy, LLC
c/o Frank M. Wolff, Esq.
Nardella & Nardella, PLLC
135 W. Central Blvd., Suite 300
Orlando, FL 32801
Telephone: (407) 966-2680

Email: fwolff@nardellalaw.com

**Subchapter V Trustee:**
Linda Marie Leali, P.A.
2525 Ponce De Leon Blvd., Suite 300
Coral Gables, FL 33134
Telephone: (305) 341-0671
Email: trustee@lealilaw.com

## ARTICLE XII — RECOMMENDATION

The Debtor recommends acceptance of this Plan. The Plan provides for the payment in full (with interest) of the Allowed Secured Claim of Frank Daniels over time, preserves the Debtor's ability to operate its rental properties and continue its community housing mission, and provides at least as much recovery to all creditors as would a liquidation under Chapter 7.

Dated: 5-22-      , 2026

Respectfully submitted,

ALL SEASONS JOY, LLC

By: _Hughetta Davis_
Hughetta Davis, Manager

DIVINE PARTNERS, LLC

By: _Hughetta Davis_
Hughetta Davis, Manager